**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TIMOTHY MARCHMAN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 C 6051 |
| | ) | |
| v. | ) | |
| | ) | |
| ADVOCATE BETHANY HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Before the court is defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the reasons stated below, defendant's motion is granted.


**BACKGROUND**

The following relevant facts are drawn from the parties' statements of material facts, with any differences between them resolved in Marchman's favor.    Pursuant to Local Rule 56.1(b)(3)(C), all material facts set forth in the defendant's statement are deemed to be admitted unless controverted by the statement of the plaintiff.

Defendant Advocate Health Care d/b/a Bethany Hospital ("Advocate") is a hospital located in Oakbrook, Illinois. Plaintiff Timothy Marchman ("Marchman") was employed by Advocate as a Nuclear Medicine Lead Technician in the hospital's radiology

department. As a Nuclear Medicine Lead Technician, Marchman performed diagnostic testing, received and recorded radioactive material, performed scans on patients, and prepared on-call associate's schedules. Marchman began work on July 7, 2000. His supervisor was Milton Barnes ("Barnes"), Bethany Hospital's Director of Diagnostic Services.

Although the Nuclear Medicine section of the Radiology Department operated 24-hours a day, seven days a week, Marchman was its only full-time employee. During the time of Marchman's employment, the section also had one contract employee, Rafig Qadri ("Qadri"). Both Marchman and Qadri were assigned on-call and call-in assignments after regular working hours and weekends. "On-call" refers to situations where (1) an associate is not required to remain on the work premises, but is required to be available for phone contact, or (2) an associate is required to carry and respond to a paging or beeping device during hours other than his normal work time. "Call-in" refers to instances where (1) an on-call associate is required to return to his work site after he has finished work for the day and has already left the site, (2) an associate who is on-call is called in early before his scheduled shift, or (3) an associate is called in on his day off. Marchman and Qadri were paid $3.00 per hour when assigned to on-call duty. They were paid time and one-half when called in, with a guaranteed minimum of two hours of work.

Advocate's pay period consists of 14 consecutive calendar days, beginning on a Sunday and ending on a Saturday. Advocate does not pay daily overtime. Rather, hours can be accumulated towards overtime. Associates are required to work more than 40 hours a week to earn overtime. Hours that can be accumulated towards overtime include regular hours, clinical and non-clinical educational hours, and call-in hours worked. Hours that cannot be accumulated toward overtime include paid time off, on-call, and call-in guaranteed minimum hours.

When Marchman began his employment at Advocate, he was paid $23.75 per hour. He subsequently received salary increases in 2001, 2002, and 2003. His final salary was $29.17 per hour. In December 2003 Barnes informed him that he would not be awarded a salary increase.

Pursuant to Advocate's compensation policy, an associate is paid his regular hourly rate for all hours spent attending an approved continuing education program during working hours. Marchman attended a continuing education class on November 8, 2002, for which he was paid. He also produced a money order receipt dated October 24, 2003 in support of his claim that he attended a second educational course that month. However, Barnes stated in an affidavit that he never received or approved the reimbursement

request.[1]

At various times during July 2003, December 2003, and February 2004, Marchman complained verbally to Lisa Dobbs ("Dobbs"), Executive Director of the hospital, that Advocate had failed to pay him for overtime. In response to one of the 2003 inquiries, Dobbs explained to him that an associate was required to work more than 40 hours during a pay period week to earn overtime.[2] Barnes and representatives from human resources later provided Marchman with Advocate's overtime policy.

On February 16, 2004 Marchman attended a Town Hall meeting at Bethany Hospital where Advocate corporate officials met with Bethany employees concerning the Advocate system and employee relations. During the Town Hall meeting Marchman complained to Advocate's corporate officials that it had failed to pay him properly for overtime for all hours worked over eight hours during a day. After the meeting, he discussed his complaint with the human resources department and Barnes. Barnes explained to Marchman that he was not eligible for overtime if he did not work over 40 hours during a pay period and that vacation leave hours are

---

[1] Marchman's assertions regarding this class are inconsistent. He testified in his deposition that he was not sure whether he was paid for attending the class. Advocate includes this testimony in its Rule 56.1 Statement, and Marchman offers no references to the record to controvert or clarify it. However, later in his response to Advocate's Local Rule 56.1 Statement he asserts that Barnes approved all of his reimbursement requests, but that Barnes did not fully pay him for all of them. Marchman provides no citations to the record that support this assertion either.

[2] Dobbs testified that she only recalled speaking with Marchman once, sometime in 2003.

not considered in the calculation of weekly hours for overtime.

Marchman claims that on February 6, 2004, Nazareen Ashraf ("Ashraf"), an EKG technician in the Radiology Department, reported to her supervisor that Marchman may have damaged the nuclear medicine camera. After receiving the complaint, Barnes requested that Tom Collins ("Collins"), Site Manager for Clinical Engineering for Bethany Hospital, inspect the nuclear medicine camera to determine whether it had been damaged. Upon completion of an investigation, Barnes concluded that Marchman had not damaged the nuclear medicine camera. Marchman admitted that no co-workers approached him concerning the allegation that he may have damaged the nuclear medicine camera.

Sometime around February 4, 2004, a Bethany Hospital associate informed Human Resources that she had been sexually harassed by Marchman. After the Human Resources department received the complaint, Brenda Mitchell ("Mitchell"), a Human Resources representative, conducted an investigation pursuant to Advocate's General and Sexual Harassment Policy. The investigation included extensive interviews of Ashraf, Marchman, Mary Bruce ("Bruce"), Ashraf's supervisor, Ashraf's co-workers, and Barnes. After the investigation, Mitchell prepared an investigation report that concluded that Marchman's actions were in violation of Advocate's General Harassment and Sexual Harassment policy. The report was submitted to Jason Spigner, Director of Human Resources,

Barnes and Advocate's Workplace Diversity Department. On February 17, 2004, Advocate terminated Marchman's employment for violation of its sexual harassment policy.

Marchman filed a Formal Resolution Request contesting the allegations of sexual harassment. An arbitration panel was formed, consisting of Al Lewis, Vice President of Workforce Diversity, Jeane Jones, an Advocate Associate, and Verna Dowden, an Advocate Manager. On February 25, 2004, the Arbitration Panel held a hearing. Marchman, Ashraf, Barnes, Bruce and other associates participated in the hearing. On March 25, 2004, the Arbitration Panel issued a final and binding decision that upheld Advocate's termination of Marchman. Subsequent to his termination, Marchman did not file a wage claim with any federal or state administrative agency.

On September 16, 2004, Marchman filed his five-count pro se complaint. Count I is a claim under the Federal Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. In particular, Marchman claims that Advocate failed to pay him for on-call hours worked on the following dates: September 9, 2000; October 1-2, 2000; October 7-8, 2000; October 28-29, 2000; November 4-5, 2000; November 25-26, 2000; December 13-14, 2000; December 23-24, 2000; December 24-25, 2000; December 31, 2000-January 1, 2001; January 20-21, 2001; February 17-18, 2001; October 18-19, 2003; and October 25-26, 2003. Marchman also contends that he was not paid for overtime hours

worked during the pay period of August 10-23, 2003, and that he was entitled to overtime for days on which he worked more than eight hours during the period of December 26, 2003-February 16, 2004.

Count II asserts a claim for retaliation under the FLSA. Marchman contends that his employment was terminated in retaliation for his complaints regarding Advocate's failure to compensate him properly for overtime hours worked, in violation of § 15(a)(3) of the FLSA. He also argues in his response brief that he was terminated in retaliation for his complaints about Barnes's use of abusive language towards him.

Count III is for violation of the Illinois Minimum Wage Law, 820 ILCS 105/1 et seq. Count IV is for violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 et seq. Counts III and IV rely upon the same nucleus of facts as Count I. Finally, Count V is a claim for defamation based upon the allegations that Marchman had intentionally damaged the nuclear medicine camera.

Advocate now moves for summary judgment on all of Marchman's claims.

**<u>DISCUSSION</u>**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

Once the moving party has supported its motion for summary judgment, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Any fact asserted in the movant's affidavit will be accepted by the court as true unless the adverse party submits its own affidavits or other evidence contradicting the assertion. Curtis v. Bembenek, 48 F.3d 281, 287 (7th Cir.

1995). If the adverse party does not respond with evidence complying with Rule 56, "summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

A pro se plaintiff is entitled to have his pleadings construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). Such plaintiffs are also entitled to a certain amount of latitude with respect to the technical rigors of summary judgment. Kincaid v. Vail, 969 F.2d 594, 598 (7th Cir. 1992). However, where a pro se plaintiff has not pointed to anything beyond conclusory statements in the pleadings which would indicate the existence of a triable issue of fact, he has failed to meet his burden under Rule 56. See Timms v. Frank, 953 F.2d 281, 285 (7th Cir. 1992) (holding that all pro se litigants are entitled to notice of the requirements of Rule 56 because failure to point to evidence beyond the complaint will result in summary judgment being entered against them).

Under the Local Rules of the Northern District of Illinois, a party filing a motion for summary judgment under Fed. R. Civ. P. 56 must serve and file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." N.D. Ill. Local R. 56.1(a)(3). Further, Local Rule 56.1(b)(3)(B) requires that the non-moving party file a reply containing "a response to each numbered paragraph in the moving party's

statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." The reply must also include "any additional facts that require the denial of summary judgment," with appropriate references to the record. N.D. Ill. Local R. 56.1(b)(3)(C). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Id. See generally Koszola v. Bd. of Educ. of the City of Chicago, 385 F.3d 1104, 1108 (7th Cir. 2004).

A district court is not required to "wade through improper denials and legal argument in search of a genuinely disputed fact." Bordelon v. Chicago School Reform Bd. of Trs., 233 F.3d 524, 529 (7th Cir. 2000). A mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material. Edward E. Gillen Co. v. City of Lake Forest, 3 F.3d 192, 196-97 (7th Cir. 1993). Moreover, in considering a motion for summary judgment, a court need not assume the truth of a nonmovant's conclusory allegations on faith or scour the record to unearth material factual disputes. Carter v. Am. Oil Co., 139 F.3d 1158, 1163 (7th Cir. 1998). "Ultimately, the Court must decide 'whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict.'" Ostergren v. Vill. of Oak Lawn, 125 F.Supp.2d 312, 319

(N.D. ill. 2000) (quoting <u>Palucki v. Sears, Roebuck & Co.</u>, 879 F.2d
1568, 1573 (7th Cir. 1989)).


**A.      Marchman's FLSA and IMWL Claims (Counts I and III)**

        Marchman alleges in his complaint that Advocate failed to
pay him overtime in violation of the Fair Labor Standards Act, 29
U.S.C. § 201 <u>et seq.</u> ("FLSA"), and the  Illinois Minimum Wage Law,
820 ILCS 105/1 <u>et seq.</u> ("IMWL"), both of which require overtime
payment at one and one-half times the regular rate for all hours
worked in excess of 40 in one week.  Advocate moves for summary
judgment on these claims, arguing that (1) Marchman has failed to
allege a violation of the FLSA; (2) Many of Marchman's claims are
time-barred; and (3) Marchman has failed to produce any evidence
that Advocate failed to properly pay him for all hours worked.
Because (2) and (3) dispose of both Count I and Count III, the
court will not consider (1), which relates only to Count I.

        An  employee  who  brings  suit  for  unpaid  overtime
compensation has the burden of proving that he performed work for
which he was not properly compensated.  <u>Anderson v. Mount Clemens
Pottery Co.</u>, 328 U.S. 680, 687 (1946).  This usually requires a
showing that the employer's time records are either "inaccurate or
inadequate."  <u>Bjornson v. Daido Metal U.S.A., Inc.</u>, 12 F.Supp.2d
837, 840 (N.D. Ill. 1998) (quoting <u>Mount Clemens</u>, 328 U.S. at

687).[3]  The burden then shifts to the employer to come forward with
evidence of the precise amount of work performed or with evidence
to negate the reasonableness of the inference to be drawn from the
employee's evidence.  Id. at 687-88.

Advocate first argues that most of Marchman's claims are
time-barred.  The FLSA has a two-year statute of limitations,
unless the violation was willful, in which case the statute of
limitations is three years.  29 U.S.C. § 255(a).  The IMWL has a
three-year statute of limitations.  820 ILCS 105/12(a).  Marchman
claims that Advocate failed to pay him for on-call hours worked on
the following days: September 9, 2000; October 1, 2000; October 2,
2000; October 7-8, 2000; October 28-29, 2000; November 4-5, 2000;
November 25-26, 2000; December 13-14, 2000; December 23-24, 2000;
December 24-25, 2000; December 31, 2000-January 1, 2001; January
20-21, 2001; February 17-18, 2001; October 18-19, 2003; and October
25-26, 2003.  The court agrees with Advocate that all but the last
two disputed pay period claims are time-barred.  Marchman filed
suit on September 16, 2004, so any claims based upon events prior
to September 16, 2001 are time-barred under either statute.
Indeed, Marchman concedes as much in his response.

As for the remaining disputed dates in 2003, Marchman has

_____

[3]As the Bjornson court noted, on a motion for summary judgment by the
employer the plaintiff does not literally have to "show" or "prove" anything;
rather, he is only required to demonstrate the existence of a genuine issue of
material fact to defeat the motion.  Bjornson, 12 F.Supp.2d at 840 n.6.

failed to demonstrate the existence of a genuine issue of material fact with regard to the inaccuracy or inadequacy of Advocate's payroll records for his on-call overtime. Furthermore, he does not dispute that Qadri's payroll records indicate that he was on call during the two disputed dates, not Marchman. In his response to Advocate's Local Rule 56.1(a)(3) Statement of Material Facts, Marchman either admits that the payroll records are accurate or states that he "lacks sufficient knowledge to either admit or deny" Advocate's fact statement. Pl.'s Resp. to Def.'s Local R. 56.1(a)(3) Statement, ¶¶ 44, 47. Because Marchman fails to point to any controverting evidence in the record, Advocate's statements regarding the accuracy of its payroll records are deemed admitted and his FLSA claim with regard to the disputed on-call hours fails. See N.D. Ill. Local R. 56.1(b)(3)(C).

Similarly, Marchman's claims regarding Advocate's failure to pay him for overtime hours actually worked are unsupported by citations to the record. In his response to Advocate's Rule 56.1 Statement, he states without factual support that with regard to the pay period of August 10-23, 2003, he "worked over forty hours but defendant refused to pay for overtime by claiming that plaintiff's vacation hours cancelled out the overtime in the pay period." Pl.'s Resp., ¶ 75. However, he does not challenge the accuracy of Advocate's records for this pay period, instead simply stating that "Plaintiff lacks sufficient knowledge to either admit

or deny the figures" in Advocate's Rule 56.1 Statement. Pl.'s Resp., ¶ 76. Marchman gives a similar response to Advocate's records for December 21, 2003–February 18, 2004, the other challenged period. See Pl.'s Resp., ¶ 79. Again, because Marchman fails to identify any controverting evidence in the record, Advocate's statements regarding the accuracy of its payroll records are deemed admitted, and Marchman's lack of controverting evidence dooms his FLSA claim.

Marchman attempts to avoid summary judgment by referring to the deposition testimony of Barnes where he discussed possible changes made to Marchman's time cards. Barnes admitted that he may have made changes to Marchman's time records of September 9, 2000, September 29, 2000, and September 30, 2000. However, as stated above, any claim based upon these dates is time-barred. In any event, merely alleging that Barnes adjusted certain time entries is by itself insufficient to create a genuine issue of material fact. Barnes indicated in his deposition that the changes were made to reflect actual time earned by an employee. Although Marchman contends that the time cards are "not trustworthy" because Barnes admitted to altering time cards, he offers no evidence to support an inference that Barnes's alterations were anything other than legitimate. He also offers no evidence that Barnes adjusted the time cards for the disputed 2003 entries. Inferences that are supported by only speculation or conjecture will not defeat a

summary judgment motion.  <u>McDonald v. Vill. of Winnetka</u>, 371 F.3d
992, 1001 (7th Cir. 2004).

Marchman also states in his response to defendant's Local
Rule 56.1(a)(3) Statement that he "has identified and is making
efforts to get some former and current employees who have suffered
the same fate as Plaintiff, to testify on plaintiff's behalf at
trial."  Pl.'s Resp., ¶ 49.  However, this assertion is inadequate.
Marchman is required to provide specific references to the record
in his response.   Speculative assertions regarding undisclosed
witnesses will not controvert Advocate's statement of material
facts.  Conclusory allegations, if not supported by evidence in the
record, will not preclude summary judgment.  <u>See Haywood v. North</u>
<u>Am. Van Lines, Inc.</u>, 121 F.3d 1066, 1071 (7th Cir. 1997).

Marchman also contends that Advocate failed to pay him for
attending continuing education courses.  However, Advocate states
in its Local Rule 56.1 statement that Marchman was reimbursed for
a class he attended on November 8, 2002, and that he was not
reimbursed for the money order dated October 24, 2003 because it
was never submitted to or approved by Barnes.  Marchman offers no
citations to the record to counter these statements, so they are
admitted.  Because Marchman has offered no evidence supporting his
claim of entitlement to payment for attending continuing education
classes, this argument also fails.

In light of the foregoing, defendant's motion for summary

judgment with regard to Count I is granted.

The IMWL parallels the FLSA, and thus the same analysis applies to claims made under the IMWL and FLSA. <u>Skelton v. American Intercontinental Univ. Online</u>, 382 F.Supp.2d 1068, 1074 (N.D. Ill. 2005). <u>See also Bjornson</u>, 12 F.Supp.2d at 843 (FLSA and IMWL are co-extensive). Marchman's IMWL claim therefore fails for the same reasons as his FLSA overtime claim. Defendant's motion for summary judgment with regard to Count III is also granted.

## B. IWPCA Claim (Count IV)

Advocate next moves for summary judgment on Count IV, which asserts a claim under the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 <u>et seq.</u> ("IWPCA"). Advocate contends that Marchman has failed to identify any evidence supporting his claim in his complaint that he was entitled to a pay rate of $28.46 per hour, and that he has failed to identify any specific dates when Advocate failed to pay him for overtime hours worked. Marchman counters that he has alleged facts sufficient to avoid summary judgment.

Under the IWPCA, "[a]ll wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned." 820 ILCS 115/4. In his complaint, Marchman claims that Advocate promised to pay him $28.46 per hour,

and that it failed to do so for all hours worked. However, as
Advocate points out, Marchman has failed to establish either that
he was entitled to an hourly rate of $28.46, or that he was not
paid for all hours worked. With regard to his salary, Marchman
provides no evidence that Advocate ever promised to pay him at a
rate of $28.46 per hour. Furthermore, he concedes in his response
to Advocate's Rule 56.1 statement that his salary was increased to
$29.17 per hour.[4] As for his claim that he was not paid for all
hours worked, as discussed above Marchman has failed to offer any
evidence that Advocate failed to pay him for any of the disputed
hours. As a result, Marchman's IWPCA claim fails.

In his response to Advocate's Local Rule 56.1 Statement,
Marchman again attempts to avoid summary judgment by pointing to
the deposition testimony of Barnes that he altered Marchman's
timecard. However, as stated previously, Marchman's conclusory
allegations about Barnes's actions will not defeat a summary
judgment motion. Because Marchman does not point to any other
evidence in the record supporting his claim, summary judgment on
Count IV is granted.

---

[4]Marchman stated in his interrogatory responses that his "regular rate of
pay upon termination was $29,1776 not $28.46 as previously stated." Def.'s Rule
56.1(a)(3) Statement of Material Facts, Ex. 16. Marchman later clarifies in his
response to Advocate's Rule 56.1 Statement that his hourly rate was increased to
$29.17.

**C.      Claim of Retaliation under the FLSA (Count II)**

Advocate next moves for summary judgment on Marchman's claim of retaliation under the FLSA, arguing that Marchman has failed to provide evidence supporting his claim. Marchman counters that the timing of his termination raises a question of fact and that summary judgment would therefore be inappropriate.

To establish a retaliation claim under § 215(a)(3) of the FLSA, a plaintiff has the burden of demonstrating that the defendant engaged in retaliatory conduct, either through the direct or indirect method of proof. Cichon v. Exelon Generation Co., L.L.C., 401 F.3d 803, 810 (7th Cir. 2005). The indirect method employs the familiar burden-shifting framework prescribed by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), as adapted for use in the context of retaliation claims. Cichon, 401 F.3d at 810.

In order establish a prima facie case of retaliation under the indirect method, a plaintiff must establish that (1) he was engaged in statutorily protected activity; (2) he was performing his job according to his employer's legitimate expectations; (3) he suffered a materially adverse action by his employer; and (4) he was treated worse than a similarly situated employee who did not engage in statutorily protected activity. Scaife v. Cook County,

446 F.3d 735, 739 (7th Cir. 2006); <u>Cichon</u>, 401 F.3d at 811-12.[5]
Once the plaintiff has established his prima facie case, the burden
shifts to the defendant to provide a legitimate, nondiscriminatory
reason for the adverse employment action.  <u>Scaife</u>, 446 F.3d at 739;
<u>Cichon</u>, 401 F.3d at 812.  If the defendant provides a legitimate
reason, the burden shifts back to the plaintiff to show that the
defendant's proffered reason is merely pretextual.   <u>Scaife</u>, 446
F.3d at 739-40.

Advocate argues that Marchman has not satisfied factor (2),
which requires a showing that he was performing his job according
to Advocate's legitimate expectations.  Marchman was terminated for
sexual harassment of a co-worker after an internal investigation.
After his termination, an internal Conflict Resolution Arbitration
Panel hearing was held, which upheld the termination.  We agree
that the undisputed facts in this case do not support Marchman's
prima facie case for retaliation.  Furthermore, even if Marchman
were able to establish a prima facie case, he has failed to rebut
Advocate's evidence showing that the reason for his termination was
legitimate and nondiscriminatory.

Marchman contends that the timing of his termination was
"very curious," and that Advocate's ten-day investigation was "a

---

[5] Advocate asserts that factor (4) is "there was a causal between the
protected expression and the adverse action."  However, the Seventh Circuit no
longer requires such a causal link under the indirect method.  <u>See Hull v.
Stoughton Trailers, LLC</u>, 445 F.3d 949, 951 (7th Cir. 2006); <u>Stone v. City of
Indianapolis Pub. Utils. Div.</u>, 281 F.3d 640, 643-44 (7th Cir. 2002).

joke." Pl.'s Mem. In Opp'n to Def's Mot. Summ. J., p. 4. However, he offers no evidence to support his contention that the investigation was in any way inadequate, and his suspicious timing claim by itself does not establish that Advocate's reason for his termination was pretextual. <u>See Cichon</u>, 401 F.3d at 811.

Marchman also claims in his Response that he was retaliated against because he complained of Barnes's use of abusive language toward him. However, Marchman's complaint contains no reference to such allegations, and these allegations are unrelated to Marchman's FLSA claim. A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment. <u>Shanahan v. City of Chicago</u>, 82 F.3d 776, 781 (7th Cir. 1996).

Because Marchman's claim of retaliation under the FLSA raises no genuine dispute of material fact, Advocate's motion for summary judgment on Count II is granted.

### D. Defamation (Count V)

Marchman's final claim is for defamation under Illinois law.[6] Marchman asserts in his complaint that "Defendant's false

---

[6]Because we have granted summary judgment on Marchman's federal claims, the general rule would be that we would no longer have jurisdiction over his state-law defamation claim. "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." <u>Wright v. Assoc. Ins. Cos. Inc.</u>, 29 F.3d 1244, 1251 (7th Cir. 1994) (citing 28 U.S.C. §

allegations contributed to Marchman's termination and caused him to suffer economic hardship, embarrassment, bad reputation and to be viewed as immoral in character."   Advocate argues that it is entitled to a conditional privilege because the communications were part of its investigation of the charges that Marchman had damaged hospital equipment.

Marchman contends that the statements accusing him of breaking the nuclear medicine camera were defamatory <u>per se</u>.[7]  In its summary judgment motion, Advocate does not contest the defamatory nature of the accusation.  Rather, it argues that the statements are not actionable because they are subject to conditional privilege.

---

1367(c)).  However, the court may retain a state-law claim "when the correct disposition of the claim is 'so clear as a matter of state law that it can be determined without further trial proceedings and without entanglement with any difficult issues of state law.'" <u>Id.</u> at 1252 (quoting <u>Brazinski v. Amoco Petroleum Additives Co.</u>, 6 F.3d 1176, 1182 (7th Cir. 1993)).  We will therefore address Advocate's motion for summary judgment on this claim.  <u>See Trask v. General Elec. Co.</u>, 207 F.Supp.2d 843, 847 (N.D. Ill. 2002) (jurisdiction retained over state defamation claim after summary judgment granted on federal employment claims).

[7]A statement is defamatory if it impeaches a person's reputation and thereby lowers that person in the estimation of the community or deters third parties from associating with that person.  <u>Schivarelli v. CBS Inc.</u>, 333 Ill.App.3d 755, 759, 776 N.E.2d 693, 696 (1st Dist. 2002) (citing <u>Kolegas v. Heftel Broad. Corp.</u>, 154 Ill.2d 1, 10, 607 N.E.2d 201, 206 (1992)  Defamatory statements may be actionable <u>per se</u> or actionable <u>per quod</u>.  <u>Id.</u>  A statement is defamatory <u>per se</u> if it is so obviously and naturally harmful to the person to whom it refers that injury to his reputation may be presumed.  <u>Id.</u>, 776 N.E.2d at 697.   Illinois law recognizes five categories of statements that are considered defamatory <u>per se</u>:  (1) those imputing the commission of a criminal offense;  (2) those imputing infection with a loathsome communicable disease; (3) those imputing an inability to perform or want of integrity in the discharge of duties of office or employment;  (4) those that prejudice a party, or impute lack of ability, in his or her trade, profession or business;  and (5) those imputing adultery or fornication.  <u>Id.</u>

To determine whether a published statement is conditionally privileged, "a court looks only to the occasion itself for the communication and determines as a matter of law and general policy whether the occasion created some recognized duty or interest to make the communication so as to make it privileged." Kuwik v. Starmark Star Mktg. & Admin., Inc., 156 Ill.2d 16, 27, 619 N.E.2d 129, 134 (1993). Three conditionally privileged occasions are recognized: situations that involve (1) some interest of the person who publishes the defamatory matter; (2) some interest of the person to whom the matter is published or of some third person; and (3) a recognized interest of the public. Id. at 29, 619 N.E.2d at 135.[8] A plaintiff can show abuse of a conditional privilege if he has evidence of "a direct intention to injure [him], or ... a reckless disregard of [the defamed party's] rights and of the consequences that may result to him." Id. at 30, 619 N.E.2d at 135. Acts constituting reckless disregard of a plaintiff's rights include the failure to properly investigate the facts, the failure to limit the scope of the material, or the failure to send the material to only the proper parties. Id., 619 N.E.2d at 136.

Advocate contends that its statements regarding its investigation of Marchman are subject to conditional privilege,

---

[8]Advocate asserts that the five-factor test for conditional privilege, as set forth in Ashe v. Hatfield, 13 Ill. App. 3d 214, 217, 300 N.E.2d 545, 547 (1st Dist. 1973), applies to this case. However, this test was discarded by the Illinois Supreme Court in Kuwik and is no longer applicable. See Kuwik, 156 Ull.2d at 25-27, 619 N.E.2d at 133-34.

supporting its claim with uncontroverted citations to the record. After receiving a complaint that Marchman may have damaged the nuclear medicine camera, Barnes requested that Collins, site manager for clinical engineering, inspect the nuclear medicine camera to determine whether it had been damaged. Upon completion of his investigation, Barnes concluded that Marchman had not damaged the camera. Marchman admitted that no co-workers approached him concerning the allegations that he damaged the camera.[9] Marchman does not dispute Advocate's claim that the communications were subject to conditional privilege.

Marchman counters Advocate's claim of conditional privilege by arguing that Barnes disclosed the allegations regarding the camera to Bruce and Collins, and that neither had any reason to know about this issue. If proven, such conduct could be found to constitute a reckless disregard of Marchman's rights and an abuse of qualified privilege. See Kuwik, 156 Ill.2d at 30, 619 N.E.2d at 136. However, Advocate has provided evidence that it was appropriate for Barnes to contact Collins in connection with the investigation, and Marchman has offered no reference to the record refuting this evidence. As for Bruce, Marchman has offered no

---

[9]In response to this statement in Defendant's Rule 56.1 Statement, Marchman claims that "Paragraph 98 shows that defendants informed other co-workers about the accusations that Marchman had intentionally broken the camera." Pl. Resp. To Def. Rule 56.1 Statement, ¶ 96. However, Paragraph 98 deals with Advocate's investigation of sexual harassment claims against Marchman, and make no reference to the incident involving the nuclear medicine camera. Marchman therefore has failed to controvert this statement.

evidence that she was ever even informed of the allegations. Although Marchman offers excerpts of Barnes' deposition in an effort to show that Barnes spoke to Bruce, the cited excerpts contain no mention of her. As a result, Marchman has failed to prove that Advocate abused its qualified privilege.

Because the allegedly defamatory statements were made in connection with the investigation of the job-related accusations against Marchman, they are conditionally privileged. Marchman has failed to show that Advocate abused this conditional privilege, so Marchman's defamation claim fails and Advocate's motion for summary judgment on Count V is granted.

## CONCLUSION

For the reasons explained above, defendants' motion for summary judgment on all counts of the Complaint is granted.

Date:        July 12, 2006

ENTER:    _____

John F. Grady, United States District Judge